613 A.2d 1011

**STATE of Maryland**

v.

**John Charles GLASER.**

**No. 1898, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

Oct. 5, 1992.

Gary E. Bair, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Sandra A. O'Connor, State's Atty. for Baltimore County, Towson, on the brief), for appellant.

Mark Colvin, Asst. Public Defender (Stephen E. Harris, Public Defender on the brief), Baltimore, for appellee.

Argued before FISCHER, CATHELL and MOTZ, JJ.

CATHELL, Judge.

On June 30, 1989, an automobile driven by John Charles

Glaser,[1] appellee, was traveling in the wrong direction on the inner loop of the Baltimore Beltway when it struck a car driven in the proper direction by Everette Jones. Jones died as a result of the injuries caused by the accident.

The investigation disclosed that appellee's vehicle was being driven northbound in the southbound lane of the beltway. Jones's vehicle left forty-three feet ten inches of skid marks, and there was a veering toward the shoulder of the inside of the inner loop. There was, however, no indication of braking at any time with regard to appellee's vehicle. An open bottle of alcohol was found inside appellee's vehicle, and blood samples drawn from appellee during the hours following the collision indicated that his blood alcohol level was between .22 and .25. Additionally, according to witnesses to the accident, appellee made efforts to leave the scene.

The investigating officer issued two traffic citations to appellee, one for driving while intoxicated and the other for driving the wrong way on a one-way street. Appellee subsequently paid a fine of $35 for driving the wrong way on a one-way street. After the ticket was paid, the State *nol prossed* the DWI charge.

On September 29, 1989, the State filed an eight-count criminal information charging appellee with automobile manslaughter and related counts. Glaser moved to dismiss Count One (automobile manslaughter) and Count Two (homicide by motor vehicle while intoxicated) on double jeopardy grounds. The motion was denied and the parties proceeded on Count One by way of an agreed statement of facts. Among the facts relied upon by the State to prove automobile manslaughter was the fact that appellee was driving in the wrong direction on the inner loop of the beltway. The court found Glaser guilty and sentenced him to five years incarceration. On appeal, we reversed, stating that the prosecution relied on the fact that Glaser traveled

---

1.  Appellee's name is spelled "Glasser" in an earlier appeal filed in this case. *See Glasser v. State,* 87 Md.App. 461, 590 A.2d 171 (1991).

in the wrong direction on the beltway in order to prove grossly negligent conduct and this echoed the traffic citation for which he had previously pled guilty. *See Glasser v. State*, 87 Md.App. 461, 590 A.2d 171 (1991).

On retrial, appellee filed a motion to dismiss the charges. At a hearing held on September 18, 1991, the court dismissed Count One, stating that it would not be possible for the State to prove that charge without showing that Glaser drove on the wrong side of the highway. The court denied appellee's motion as to Counts Two through Eight.

On November 10, 1991, appellee filed a demand for a bill of particulars. The State responded to the demand stating that it intended to prove its case without reference to the fact that Glaser was driving the wrong way on the beltway. At a hearing held on December 17, 1991, the court dismissed Count Two for the same reasons that it had previously dismissed count One.[2] Appellee entered a plea of guilty as to Count Three (driving while intoxicated) and was sentenced to a one-year term of imprisonment, with credit for twenty-two months time served. The State *nol prossed* the remaining counts [3] and filed a notice of appeal from the dismissal of Counts One and Two.

The State maintains that the trial court improperly dismissed the charges of automobile manslaughter and homicide by motor vehicle while intoxicated on grounds of double jeopardy. Glaser contends that prosecution on manslaughter by automobile is barred by this Court's previous opinion and mandate in *Glasser v. State*, 87 Md.App. 461, 590 A.2d 171 (1991), principles of due process, and *res judicata*.

---

**2.** The court also dismissed Count Seven (driving on the wrong side of a one-way street) at the State's request since appellee had previously paid the $35 fine.

**3.** The remaining counts included Count Four (driving under the influence); Count Five (reckless driving); Count Six (negligent driving); and Count Eight (driving on a restricted license).

## LEGAL ANALYSIS

### 1. Double Jeopardy

██ The State argues that the trial court erred by dismissing the charges based upon a violation of the *Grady*[4] rule and by failing to take into account the self-imposed limitation on its proof as indicated in the bill of particulars. In *Grady*, the State charged and prosecuted the defendant Corbin for manslaughter and other homicide charges after he had already been charged and convicted of driving while intoxicated and failing to keep right of the median. The Supreme Court held that "the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." 495 U.S. at 521, 110 S.Ct. at 2093 (footnote omitted). *See U.S. v. Felix,* —— U.S. ——, ——, 112 S.Ct. 1377, 1383–84, 118 L.Ed.2d 25 (1992). The Court explicitly limited its holding in *Grady*, however, saying:

> This is not an "actual evidence" or "same evidence" test. *The critical inquiry is what conduct the State will prove, not the evidence the State will use to prove that conduct.* As we have held, the presentation of specific evidence in one trial does not forever prevent the government from introducing that same evidence in a subsequent proceeding.

495 U.S. at 521–22, 110 S.Ct. at 2093 (emphasis added) (footnote omitted). *See Felix,* —— U.S. at ——, 112 S.Ct. at 1382 (explaining that the Court's precedents hold that mere overlap in two prosecutions does not establish a double jeopardy violation). The Court went on to say that it has never adopted, and did not adopt, a "same transaction" test for double jeopardy. 495 U.S. at 524 n. 15, 110 S.Ct. at 2094 n. 15. Further, the Court stated that its holding would not

---

4. *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990).

bar a subsequent prosecution on the homicide and assault charges if the bill of particulars revealed that the State would not rely on proving the conduct for which Corbin had already been convicted. 495 U.S. at 523, 110 S.Ct. at 2094.

The State in the case *sub judice* followed the Supreme Court's guidance in *Grady*. In filing its answer to appellee's request for a bill of particulars, the State instructed appellee that it would *not* be relying upon conduct for which he had already been convicted to prove the present charges. Instead, the State limited its proof to showing that appellee drove while intoxicated,[5] that he failed to maintain proper control, and that he attempted to flee the scene. The State also indicated that it would rely upon the nature of the impact, the absence of an attempt by appellee to apply his brakes, and the nature of the injuries and damage to the vehicles. The State will not rely upon the previously prosecuted conduct of driving the wrong way on a one-way street; thus, the *Grady* rule is inapposite.[6] Accordingly, we hold that the trial court erred in dismissing Counts One and Two based upon *Grady*.

### 2. This Court's Opinion and Mandate

Appellee argues that this Court's earlier opinion in *Glasser v. State*, 87 Md.App. 461, 590 A.2d 171 (1991), the mandate containing the expression "Judgment Reversed", and the surrounding circumstances "make clear" that a new trial was prohibited. The Court of Appeals, however, has held:

The key issue then is whether the original mandate amounted to an acquittal.... It is our ruling that where

---

**5.** We note that appellee pled guilty to, and was convicted of, driving while intoxicated. Whether the use of such evidence in his retrial would again run afoul of *Grady* is not *now* before us.

**6.** The Supreme Court has recently granted certiorari on yet another *Grady*-type case, *United States v. Dixon*, 598 A.2d 724 (D.C.1991), *cert. granted,* —— U.S. ——, 112 S.Ct. 1759, 118 L.Ed.2d 422 (1992), to reconsider the effects of *Grady*.

the mandate is ambiguous, one must look to the opinion and other surrounding circumstances to determine the intent of the court. After a review of state and federal cases, we conclude that the expression "Judgments Reversed" does not *of itself* amount to an acquittal and does not prohibit the interpretation that a new trial is intended. [Citations omitted, emphasis added].

*Couser v. State,* 256 Md. 393, 396, 260 A.2d 334 (1970). *See Balducci v. Eberly,* 304 Md. 664, 670, 500 A.2d 1042 (1985). In *Couser,* the Court of Appeals held that this Court's mandate did not result in acquittal and that a new trial was intended in order to hear testimony stricken from the record. *Couser,* 256 Md. at 399–400, 260 A.2d 334. Likewise, in *Balducci*[7] the Court of Appeals determined that the mandate and the surrounding circumstances made clear that this Court intended a new trial for the mortgagors to be given an opportunity to present evidence to sustain their burden regarding the propriety of an injunction. *Balducci,* 304 Md. at 673, 500 A.2d 1042. The *sole* effect of this Court's earlier opinion in the case *sub judice* is to prevent the State from using the conduct of driving the wrong way on a one-way street to prove an element of manslaughter by automobile. *Glasser,* 87 Md.App. at 465, 590 A.2d 171.

While the authority elsewhere is sparse, it is in concurrence with *Couser* and *Balducci.*[8] In *State v. Downey,* 104 Ariz. 375, 453 P.2d 521, 522–23 (1969), the Supreme Court of Arizona, in discussing double jeopardy arguments and referring to its order "[a]ppellee's motion to reverse—[g]ranted," stated: "As such, our order was an unqualified rever-

---

**7.** In a *Balducci* footnote, the Court of Appeals commented that a general and unqualified reversal had been held to have rendered the judgment a nullity resulting in the case standing as if a judgment had never been rendered except as restricted by the appellate opinion. Citing cases from foreign jurisdictions, it stated: "Where nothing more appears, the case must be tried anew." *Balducci,* 304 Md. at 671 n. 8, 500 A.2d 1042 (citation omitted).

**8.** We note that some of the cases in the following discussion were cited in both *Couser* and *Balducci.*

sal of the trial court's refusal to dismiss the information. There had to be a remand, which was implicit in the order. . . . Therefore, . . . the directions were inherent . . . that within its discretion . . . [it could] order a new information filed. . . ." The South Dakota Supreme Court held in *State v. Percy*, 81 S.D. 519, 137 N.W.2d 888, 890–91 (1965), that "[t]he reversal of a judgment without direction is tantamount to remand for a new trial. . . . The constitutional provisions against double jeopardy were never intended to apply where a conviction is reversed on appeal. . . ." *And see Cobb v. Snow*, 14 Utah 2d 170, 380 P.2d 457, 457 (1963) ("[W]here the defendant has complained that errors *vitiate* the judgment and it is nullified at his request, he cannot also claim that there *is* a judgment which precludes further proceedings against him." (footnote omitted)). *Accord State v. Jaramillo*, 25 Utah 2d 328, 481 P.2d 394, 395 (1971). "Ordinarily, an unconditional reversal of a judgment by an appellate court will restore the parties to the condition in which they were before suit was instituted." *Band's Refuse Removal, Inc. v. Borough of Fair Lawn*, 64 N.J.Super. 1, 165 A.2d 216, 218 (App.Div.1960), *cert. denied*, 34 N.J. 67, 167 A.2d 55 (1961). The Supreme Court of New Jersey in *Landy v. Lesavoy*, 20 N.J. 170, 119 A.2d 11, 14 (1955) also opined: "[t]he reversal of a judgment . . . restores the parties litigant to the same condition in which they were prior to its rendition. . . ." *See also Harrison Assoc. v. Rent Leveling Bd.*, 215 N.J.Super. 1, 520 A.2d 1150, 1152 (App.Div.1986), *cert. denied*, 107 N.J. 135, 526 A.2d 200 (1987); *State v. Carlaftes*, 24 N.J. 451, 132 A.2d 515, 516 (1957).

The federal courts are also in accord. "The principle that this provision [double jeopardy clause] does not preclude the Government's retrying a defendant whose conviction is set aside because of an error in the proceedings leading to conviction is a well-established part of our constitutional jurisprudence." *United States v. Tateo*, 377 U.S. 463, 467, 84 S.Ct. 1587, 1590, 12 L.Ed.2d 448 (1964). *See also Lockhart v. Nelson*, 488 U.S. 33, 38–39, 109 S.Ct. 285, 290, 102

L.Ed.2d 265 (1988); *Bullington v. Missouri,* 451 U.S. 430, 442, 101 S.Ct. 1852, 1860, 68 L.Ed.2d 270 (1981); *United States v. Ewell,* 383 U.S. 116, 122, 86 S.Ct. 773, 777, 15 L.Ed.2d 627 (1966) ("It has long been the risk that when a defendant obtains a reversal of a prior unsatisfied conviction, he may be retried in the normal course of events."); *United States v. Wood,* 958 F.2d 963, 967 (10th Cir.1992); *United States v. Borromeo,* 954 F.2d 245, 247 (4th Cir. 1992). In *United States v. Reina,* 172 F.Supp. 113, 116 (S.D.N.Y.1959) (quoting *United States v. Ball,* 163 U.S. 662, 672, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896)), the District Court stated: "a defendant [whose conviction is set aside] ... may be tried anew upon the same indictment, or upon another indictment, for the same offense of which he had been convicted." "A reversal sets aside the judgment, but allows the indictment to stand." *Spriggs v. United States,* 225 F.2d 865, 868 (9th Cir.1955), *cert. denied,* 350 U.S. 954, 76 S.Ct. 342, 100 L.Ed. 830 (1956) (footnote omitted).

We hold that, unless a reversal is based upon an insufficiency of the evidence or other basis prohibiting retrial, the mere use of the term "Judgment Reversed" in the mandate of an appellate court does not prohibit a retrial.

### 3. Res Judicata

The Court of Appeals held in *Balducci,* 304 Md. at 674–75, 500 A.2d 1042: "In light of the view we have taken of the original mandate, it is unnecessary to further consider the issue of ... *res judicata....*" Because we find that this Court's earlier mandate does not preclude the State from prosecuting Glaser for manslaughter by automobile, we also need not consider whether the doctrine of *res judicata* applies to the instant case.

THE TRIAL COURT'S DISMISSAL OF COUNTS ONE AND TWO IS REVERSED; APPELLEE TO PAY COSTS.